UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

DEBORAH ANNE MILLER,

        Plaintiff,

        v.

HARTFIELD PORTFOLIO GROUP, LLC;
HARBINGER PROCESSING GROUP, LLC;
and JASON BUZAK,

        Defendants.

─────────────────────────────

DECISION AND ORDER
14-CV-1060

## **INTRODUCTION**

On December 18, 2014, the plaintiff, Deborah Anne Miller, filed a complaint
alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§
1692, et seq.  Docket Item 1.  The defendants, Hartfield Portfolio Group, LLC
("Hartfield"); Harbinger Processing Group, LLC ("Harbinger"); and Jason Buzak, failed to
appear and defend this action, and the time to do so expired.[1]  As a result, Miller asked
the Clerk of Court to enter defaults, which accordingly were entered against Hartfield
and Harbinger on April 8, 2015, Docket Items 8 and 9, and against Buzak on August 18,
2015, Docket Item 25.  On May 21, 2018, Miller moved for a default judgment under
Rule 55(b)(2) of the Federal Rules of Civil Procedure.  Docket Item 32.  Miller seeks
$5,949.50 in damages, which includes $1,000 in statutory damages and $4,949.50 in

───────────────

[1]  The complaint also named defendants Ashley Stewart, Joseph Thompson, and
"Doe 1-5"; Miller voluntarily dismissed her claims against those defendants on May 21,
2018, however.  Docket Item 31.

attorneys' fees.  After considering Miller's memorandum of law and supporting documents, Docket Item 33, this Court grants her motion in part.

## BACKGROUND

Miller incurred consumer debt that the defendants sought to collect.[2]  Docket Item 17 (amended complaint) ¶ 7.  Toward that end, the defendants began leaving voicemail messages for Miller on December 2, 2013.  *Id.* ¶ 8.  The first message stated the following:

> Yes, hello good morning.  This is Ashley Stewart calling with the offices of Harbinger Processing.  Uh, I have the documentation here in my office that was flagged under the name and Social Security number for Deborah Miller.  Ms. Miller, I had the opportunity to speak with you last week in regards to the documentation filed here with my office and out of courtesy I did want to at least extend out another call to you um before anything was finalized on your behalf.  Um, I had explained the importance of returning the call within 24 hours of receiving this letter.  That letter that you requested has been sent and now uh we are to the point where a final decision will be made.  You can reach me at 716[-]362-0335.  That is my direct line and I will be here in the office until 1 p.m. pacific[ ] standard time.

*Id.*  On December 18, 2013, the defendants left another message, which stated:

> We are contacting Deborah Miller regarding a pre-legal matter ready to be out sourced to your local jurisdiction for suit.  We have found through our investigation that you have never been pursued legally for any matters relative.  If you would like an opportunity to resolve this matter prior to any legal proceedings, please contact one of our mediators upon receipt of this message to discuss alternative arrangements.

---

[2]  Upon entry of default, the court accepts as true the complaint's factual allegations, except those relating to damages, and draws all reasonable inferences in the moving party's favor.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)).

> Settling this matter out of court will allow you a significant savings against your balance. If you are unable to make arrangement with our mediators you will have an opportunity to allow them to submit a final statement on your behalf. Please dial 0 to be connected directly or contact us at 888-284-7631.

*Id.* ¶ 9. And on January 22, 2014, the defendants left a third voicemail, which stated:

> This is an urgent message intended solely for Deborah Miller. My name is Susan Hayward from Harbinger Processing Group. I have been put in place to address a time sensitive claim directly affecting both your name and social security number specifically. I did want to be fair in providing you with proper notification so that you have the opportunity to address this matter on a voluntary basis. Please return this call to 866-761-3023 and refer to the file number 339717. For immediate assistance please dial 0 and you will be transferred to the next available representative.

*Id.* ¶ 10. "Concerned with [the defendants'] calls," Miller retained Centennial Law Offices as counsel. *Id.* ¶ 11.

On February 14, 2014, "staff from Centennial Law Offices contacted [the defendants] by telephone, informed them that Ms. Miller was represented by counsel, and provided counsel's contact information." *Id.* ¶ 12. Nonetheless, on February 17, 2014, former defendant Ashley Stewart, *see supra* note 1, called Miller's phone and spoke with Miller's sister. *Id.* ¶ 13. Stewart advised Miller's sister that Stewart had spoken with Miller's counsel and that it was "imperative" that Miller contact Stewart to "resolve the matter." *Id.*

## DEFAULT JUDGMENT

To obtain a default judgment, a party must secure a clerk's entry of default by demonstrating, "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the case. Fed. R. Civ. P. 55(a). In considering whether to enter a

3

default judgment, the court accepts the factual allegations in the complaint and determines whether the alleged facts state a valid claim for relief; the court also has the discretion to require further proof of necessary facts. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (discussing Fed. R. Civ. P. 55(b)(2)). As to damages, the court should take steps, including by hearing or referral when necessary, to establish an amount with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (discussing Fed. R. Civ. P. 55(b)(2)).

### A. FDCPA Claims

#### 1. Liability

Miller asserts that the defendants violated the FDCPA by failing to disclose their identity as a debt collector in their messages; continuing to call her after being informed that she was represented by counsel; and communicating about her debt with a third party without her consent. Docket Item 17 ¶¶ 16-19; *see* 15 U.S.C. §§ 1692d(6), 1692e(11) (requiring disclosure of caller's identity as debt collector); 15 U.S.C. § 1692c(a)(2) (prohibiting debt collector from directly communicating with consumer who debt collector knows is represented by an attorney); 15 U.S.C. § 1692c(b) (prohibiting debt collector from communicating with a third party without consumer's consent).

Miller has adequately alleged that the defendants' actions violated the FDCPA. There is, however, an added wrinkle. In addition to the debt collection company, Miller names Jason Buzak as a defendant.

"A high-ranking employee, executive, or director of a collection agency may fit within the statutory definition of a debt collector as long as the defendant was personally

4

involved in the collection of the debt." *Williams v. Prof'l Collection Servs., Inc.*, No. CV 04-286 JS ARL, 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004); *see also Musso v. Seiders*, 194 F.R.D. 43, 47 (D. Conn. 1999) (finding that complaint adequately alleged that individual defendant who "knew of the allegedly unlawful procedures being used but nevertheless approved or ratified them" was a debt collector under the FDCPA).

According to the amended complaint, Buzak is a "managing member[ ] and operator[ ] of" Hartfield and Harbinger, and is "responsible for the policies and procedures of the companies, including those giving rise to [Miller's] causes of action." Docket Item 17 ¶ 3.

Taking the undisputed facts in Miller's amended complaint as true, the Court is satisfied that Buzak is a "debt collector" under the FDCPA. The defendants' liability under the FDCPA therefore is established.

### 2. Damages

Under the FDCPA, a court may award each plaintiff up to $1,000 in statutory damages. 15 U.S.C. § 1629k(b)(1). Proof that the statute was violated warrants damages, "although a court must then exercise its discretion to determine how much to award, up to the $1,000 ceiling." *Savino v. Comput. Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998).

In calculating an appropriate award of statutory damages, the district court considers relevant factors such as the frequency, persistence, nature, and intentionality of noncompliance by the debt collector. 15 U.S.C. § 1692k(b)(1). Awards of the $1,000 statutory maximum are rare and "are typically granted [only] in cases where a defendant's violations are 'particularly egregious or intimidating.'" *Carbin v. N.*

*Resolution Grp., LLC*, 2013 WL 4779231, *2 (W.D.N.Y. Sept. 5, 2013) (quoting *Cordero v. Collection Co.*, 2012 WL 1118210, *2 (E.D.N.Y. Apr. 3, 2012)).

Here, Miller seeks $1,000 in statutory damages. Docket Item 33 at 11. Her amended complaint alleges that she received three voicemails over a period of approximately two months; that the defendants improperly contacted her even though they knew she was represented by counsel; and that the defendants disclosed information about her debt to a third party (her sister) without her consent. In support of her request for the statutory maximum, her sole argument is that "[a]djusting for inflation, $1,000 in 1977 would be $4,237.04 in 2018" and "[a]s such, today's victims of FDCPA violations recover comparatively little in relation to the original intent of the Act." *Id.* She does not argue that his case presents facts that are "particularly egregious or intimidating," nor does she cite any case law in support of her assertion that she is entitled to the statutory maximum merely by virtue of inflation.

The Court finds that a damages award of $1,000 is not warranted by the facts of this case. *See, e.g., Fajer v. Kaufman, Burns & Assocs.*, No. 09-CV-716S, 2011 WL 334311, at *3 (W.D.N.Y. Jan. 28, 2011) (deeming $1,000 "excessive" where the defendant made numerous calls to the plaintiff's home and workplace and made empty threats of litigation). In light of the circumstances—three non-threatening voicemails and improper disclosure of information to a third party—$250 is an appropriate amount of damages. *See*, *e.g., Twarozek v. Midpoint Resolution Group, LLC,* 2011 WL 3440096, at *4 (W.D.N.Y. August 8, 2011) (awarding $250 for violation consisting of one improper telephone call made by defendant in addition to its improper disclosure of information to a third party and false representations); *Estay v. Moren & Woods, LLC,*

No. 09–CV–620A, 2009 WL 5171881 at *2 (W.D.N.Y. Dec. 22, 2009) (awarding the plaintiff $250 where the defendant made harassing calls on more than one occasion, made empty threats of litigation, and improperly disclosed information about the plaintiff's debt to a third party); *cf. Hance v. Premier Recovery Group, Inc.,* 2013 WL 85068, *2 (W.D.N.Y. January 7, 2013) (awarding $500 where the defendant called the plaintiff's home more than twenty times per month).

### 3. Attorneys' Fees

Under the FDCPA, the court has discretion to award reasonable attorneys' fees to successful litigants. *See* 15 U.S.C. § 1692k(a)(3). A court should consider case-specific variables in setting a reasonable hourly rate, which in turn should be used to calculate the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008). The hourly rates charged in the reviewing court's district are presumptively the rates that the court should use. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009). Therefore, this Court considers the prevailing market rate in the Western District of New York in determining a reasonable fee here. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (considering the market rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation").

In support of her motion, Miller submitted time records indicating that 15.26 hours were expended by an attorney and 7.43 hours were expended by a paralegal in litigating the case. Docket Item 33-5. The requested hourly rate for Robert Amador, Esq., is $300 (totaling $4,578), and the requested hourly rate for the paralegal is $50

(totaling $371.50).  Amador has "represented hundreds of consumers" in FDCPA cases "in over 35 different U.S. District Courts across the country."  Docket Item 33-4 ¶ 4.  The declaration supporting Miller's motion for attorneys' fees does not indicate the level of experience of the paralegal who worked on the case.

Given recent case law in this district, the Court finds Amador's requested hourly rate of $300, as well as the $50 hourly rate for the paralegal, to be reasonable.  *See Eades v. Kennedy, PC. Law Offices*, 343 F. Supp. 3d 104, 108 (W.D.N.Y. 2018) (awarding hourly rate of $300 for experienced FDCPA attorneys); *Langhorne v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-231C, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) (awarding hourly rate of $300 for Attorney Amador and $50 for paralegal).  The Court also finds the 22.69 hours of work to be reasonable.  Using the $300 hourly rate for Amador and the $50 hourly rate for the paralegal, this Court awards attorneys' fees to Miller in the amount of $4,949.50.

## CONCLUSION

Accordingly, Miller's motion for default judgment is granted in part in the amount of $5,199.50:  $250 in statutory damages and $4,949.50 in attorneys' fees.


SO ORDERED.

Dated:      October 7, 2019
              Buffalo, New York


                                              *s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE

8